IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marcos Osorio-Hernandez,<br><br>                    Petitioner,<br><br>vs.<br><br>Attorney General of the State of Arizona, et al.,<br><br>                    Respondents. | No.  CIV 09-2220-PHX-ROS (DKD)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE ROSLYN O. SILVER, U.S. DISTRICT COURT JUDGE:

Marcos Osorio-Hernandez filed a petition for writ of habeas corpus on October 22, 2009. On February 24, 2010, the petition was dismissed without prejudice, with leave to file an amended petition naming the proper respondent. On March 19, 2010, Osorio-Hernandez filed an amended petition. In his amended petition, he is challenging his convictions following a guilty plea for aggravated assault and possession of dangerous drugs for sale, and the imposition of an aggravated 14-year prison term for the assault, to be followed by a probationary term of 5 years for the drug offense. In his sole ground for habeas relief, Osorio-Hernandez contends that (1) the trial court improperly relied on essential elements of the offense to aggravate his sentence beyond the presumptive term, and (2) failed to give sufficient weight to the mitigating factor of his son's illness. Respondents initially contend that the petition was untimely filed. In the alternative, they maintain that  the claim is procedurally defaulted. Finally, Respondents argue the claim is without merit. Because the

Court finds the petition was timely filed but is procedurally defaulted, it recommends that Osorio-Hernandez's amended petition be denied and dismissed with prejudice.

## BACKGROUND

The facts surrounding the charged offenses are summarized in the Presentence Investigation Report:

> On October 13, 2004, working with an informant, an undercover officer negotiated the sale of two ounces of methamphetamine with codefendant Gilberto Osorio Hernandez, aka Ramon Barrera. Gilberto Osorio Hernandez and his brother, the defendant, then went to a Circle K store where the drugs were going to be exchanged. Upon arriving at the location, the informant advised the undercover officer that Ramon did not like the meeting location and did not want to do the deal there. It was decided a traffic stop would be conducted and mobile surveillance of the suspect's vehicle began. Police followed the suspects through various parts of Glendale, Peoria, and Phoenix. At one point while police were following the suspects, they turned their vehicle around and drove directly towards the undercover vehicle and attempted to ram or run the vehicle off the roadway. Police continued to follow the vehicle, at which point Gilberto Osorio Hernandez leaned out of the passenger side window and fired at the officers. The officers heard five to six gunshots coming from the handgun and at one point observed the passenger manipulate the handgun as if to change magazines or reload. The suspects drove off at a high rate of speed and police eventually lost sight of their vehicle. With the help of an air unit, the suspect's vehicle was eventually located in the parking lot of an apartment complex.
>
> The defendant and codefendant were arrested on October 19, 2004 without incident. While police were following the defendant's vehicle, police observed drugs, which were subsequently recovered, being thrown out of the passenger side of the vehicle. In his interview with police, the defendant admitted throwing the drugs out of the vehicle. He stated he had two ounces of methamphetamine, which he planned to sell, but did not yet have a buyer. Regarding his involvement in the offense committed on October 13, 2004, he admitted intentionally swerving at the officers, but meant to make them stop following. He further stated his brother fired at the officers twice, but admitted the gun was his. When asked if he had mad[e] jokes about the shooting and saying he hoped one of the cops got killed, he denied making those statements.

(Doc. 16, Exh A at 1).

Osorio-Hernandez was initially indicted on 11 felony counts related to the above incidents (*Id.*, Exh B). On February 2, 2006, he pleaded guilty to aggravated assault and possession of dangerous drugs (*Id.*, Exh A at 7-10; Exh C). Following his judgment of conviction, he filed a notice of post-conviction relief; counsel was appointed to represent him (*Id.*, Exh E). On August 21, 2006, counsel filed a notice of completion of post-conviction

1 review, stating that he had reviewed the record and was unable to find any claims for relief, and requesting an extension of time for Osorio-Hernandez to file a *pro se* petition (*Id*., Exh F).

On February 6, 2007, Osorio-Hernandez filed a pro se petition, requesting a remand for resentencing to the presumptive term.  He argued that the trial court had relied on an essential element of the offense to aggravate the sentence beyond the presumptive term, and had failed to give sufficient weight to the mitigating factor of his son's illness (*Id*., Exh G).  The State filed a response, arguing that the trial court did not rely on elements of the offense, but listed as aggravating factors the presence of an accomplice, the especially cruel and depraved manner in which the offense was committed, and the emotional harm to the victim (*Id*., Exh H).  The State also argued that it is the prerogative of the court to determine what weight, if any, is given to mitigation evidence (*Id*.).  On June 6, 2007, the trial court summarily dismissed the petition for the reasons stated in the State's response (*Id*., Exh I).

On October 4, 2007, Osorio-Hernandez petitioned for review in the Arizona Court of Appeals (*Id*., Exh J).  In his petition, he argued that the trial court erred by imposing a sentence greater than the presumptive term, citing *Blakely v. Washington*, 542 U.S. 296 (2004).  He also argued that he was "emotionally forced" to sign the plea agreement because of his son's illness (*Id*., Exh J).  In its response, the State argued that Osorio-Hernandez was precluded from obtaining relief on the ground that his plea was involuntary because he had failed to challenge the plea on that basis in the trial court.  The State also argued that Osorio-Hernandez had waived his *Blakely* claim because the issue had not been raised in his post-conviction proceedings (*Id*.).  On the merits, the State argued that Osorio-Hernandez had failed to show that the plea was involuntary; that the trial court properly considered as aggravators the presence of an accomplice, the cruel and depraved manner in which the offense was committed, and the emotion harm to the victim; and that it is the prerogative of the trial court to determine what weight, if any, to give the mitigating evidence (*Id*.).  The court of appeals denied review; on November 3, 2008, the supreme court denied review (*Id*.,

Exh L, M, N). Osorio-Hernandez filed his original petition on October 22, 2009, which was dismissed for failure to name the proper respondent (Doc. 7). On March 19, 2010, he filed an amended petition, alleging the identical ground urged in his original petition (Doc. 8).

## DISCUSSION

*Statute of Limitations*

Respondents first argue that Osorio-Hernandez's amended petition is untimely because it was not filed within one year after the Arizona Supreme Court denied review. The Court disagrees. The original petition was filed on October 22, 2009, within the one-year limitations period. The Court dismissed the petition without prejudice, and the March 19, 2010 amended petition asserts the identical ground for relief sought in the original petition. A habeas petition may be amended "as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Under the Federal Rules of Civil Procedure, an amendment relates back to the original pleading when the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading." *See* Fed.R.Civ.P. 15(c)(1)(B). A new claim raised in an amended habeas petition filed after the expiration of the limitations period, relates back to the original petition, thereby avoiding a limitations bar, if it arises "out of the same core of operative facts as a claim contained in the original petition." *Hebner v. McGrath*, 543 F.3d 1133, 1134 (9th Cir. 2008) (citing *Mayle v. Felix*, 545 U.S. 644 (2005)). The Court concludes that Osorio-Hernandez's petition is timely filed.

*Exhaustion of State Remedies*

A state prisoner must exhaust his state remedies before petitioning for a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1) & (c); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *McQueary v. Blodgett*, 924 F.2d 829, 833 (9th Cir. 1991). To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839-846 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by

- 4 -

1  properly pursuing them through the state's direct appeal process or through appropriate post-
2  conviction relief. *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v.*
3  *Copeland*, 33 F.3d 36, 38 (9th Cir. 1994).  A claim has been fairly presented if the petitioner
4  has described both the operative facts and the federal legal theory on which the claim is
5  based. *Bland v. Cal. Dep't of Corrections*, 20 F.3d 1469, 1472-73 (9th Cir.1994), *overruled*
6  *on other grounds by Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc); *Tamalini*
7  *v. Stewart*, 249 F.3d 895, 898-99 (9th Cir. 2001).  The exhaustion requirement will not be met
8  where the Petitioner fails to fairly present his claims.  *Roettgen*, 33 F.3d at 38.

9        If a petition contains claims that were never fairly presented in state court, the federal
10 court must determine whether state remedies remain available to the petitioner.  *See Rose v.*
11 *Lundy*, 455 U.S. 509, 519-20 (1982); *Harris v. Reed*, 489 U.S. 255, 268-270 (1989)
12 (O'Connor, J., concurring).  If remedies are available in state court, then the federal court
13 may dismiss the petition without prejudice pending the exhaustion of state remedies.  *Id.*
14 However, if the court finds that the petitioner would have no state remedy were he to return
15 to the state court, then his claims are considered procedurally defaulted.  *Teague v. Lane*, 489
16 U.S. 288, 298-99 (1989); *White v. Lewis*, 874 F.2d 599, 602-605 (9th Cir. 1989).  The federal
17 court may decline to consider these claims unless the petitioner can demonstrate that a
18 miscarriage of justice would result, or establish cause for his noncompliance and actual
19 prejudice.  *See Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman v. Thompson*, 501 U.S.
20 722, 750-51 (1991); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Wainwright v. Sykes*,
21 433 U.S. 72, 86 (1977); *United States v. Frady*, 456 U.S. 152, 167-68 (1982).

22       Further, a procedural default may occur when a Petitioner raises a claim in state court,
23 but the state court finds the claim to be defaulted on procedural grounds.  *Coleman*, 501 U.S.
24 at 730-31.  In such cases, federal habeas review is precluded if the state court opinion
25 contains a plain statement clearly and expressly relying on a procedural ground "that is both
26 'independent' of the merits of the federal claim and an 'adequate' basis for the court's
27 decision."  *See Harris*, 489 U.S. at 260.  A state procedural default ruling is "independent"
28

1 unless application of the bar depends on an antecedent ruling on the merits of the federal 2 claim. *See Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985); *Stewart v. Smith*, 536 U.S. 856 3 (2002). A state's application of the bar is "adequate" if it is "'strictly or regularly followed.'" 4 *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 5 262-63 (1982)). In cases in which a state prisoner has defaulted his federal claims in state 6 court pursuant to an independent and adequate state procedural rule, just as in cases 7 involving defaulted claims that were not fairly presented, federal habeas review of the claims 8 is barred unless the prisoner can demonstrate a miscarriage of justice or cause and actual 9 prejudice to excuse the default. *See Coleman*, 501 U.S. at 750-51.

10 Respondents argue that Osorio-Hernandez has not exhausted his claim and that it is 11 procedurally defaulted. The argument is two-fold: (1) the claim involves only the 12 interpretation and application of state law, and thus fails to present a cognizable federal 13 claim; and (2) the claim was not fairly presented to the state courts. Osorio-Hernandez cites 14 A.R.S. §§ 13-604 and 13-702(C) as support for argument that the trial court relied on 15 elements of the offense in imposing a sentence greater than the presumptive term. He also 16 argues that the trial court did not give sufficient weight to his mitigation evidence concerning 17 his son's illness. Both arguments involve the interpretation and application of state statutes. 18 "[I]t is not the province of a federal habeas court to reexamine state-court determinations on 19 state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Osorio-Hernandez's 20 cursory mention of the sixth amendment does not transform what is a state law issue into a 21 federal one. *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996). Because a return to state 22 court would be futile, his claim is procedurally defaulted. *Teague*, 489 U.S. at 298-99.

23 Respondents also maintain that the claim was not "fairly presented" to the state courts. 24 The Court agrees. Osorio-Hernandez's citation to Arizona sentencing statutes would not 25 have alerted the state court to the fact that he was asserting a federal legal theory. *Tamalini*, 26 249 F.3d at 898-899. In failing to fairly present his claims, he has not met the exhaustion

requirement. *Roettgen*, 33 F.3d at 38. Finally, he has not shown any cause or prejudice sufficient to excuse the procedural default. *See Coleman*, 501 U.S. at 750-51.[1]

**IT IS THEREFORE RECOMMENDED** that Marcos Osorio-Hernandez's amended petition for writ of habeas corpus be **denied and dismissed with prejudice** (Doc. 8).

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **denied** because dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See*, 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have seven days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

DATED this 27th day of October, 2010.

_____
David K. Duncan
United States Magistrate Judge

---

[1] In his reply, Osorio-Hernandez seeks the production of transcripts from an earlier mistried criminal case. This case is unrelated to the state conviction being challenged in his petition, and the transcripts are therefore irrelevant. His arguments relating to the earlier case are also irrelevant.